UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VITTORIO INFANTI and
INFANTI INTERNATIONAL, INC.,

       Plaintiffs,                                 Memorandum and Order
                                                      06 Civ. 6552

   - against -

GEORGE SCHARPF, et al.,

       Defendants.
------------------------------------------------------------x
GLASSER, United States District Judge:

      On December 8, 2006, the Plaintiffs commenced an action against the Defendants by filing a 90-page Complaint containing 500 numbered paragraphs and 27 counts and references to 124 pages of exhibits. The Defendants, Amboy National Bank ("Amboy") and George Scharpf ("Scharpf") moved this Court for an Order dismissing the Complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. In a Memorandum and Order dated June 10, 2008, this Court granted that motion with leave to amend, coupled with the admonition that scrupulous attention be paid to Rule 8 at the risk of dismissal if it is not. A 14-page Amended Complaint was thereafter filed on June 27, 2008 containing 93 numbered paragraphs with an attached RICO Case Statement of 26 pages.

      The Amended Complaint alleges eight causes of action. The first and second allege RICO violations on behalf of Infanti International, Inc. (the "Corporation") and Vittorio Infanti ("Infanti" or "plaintiff") individually, respectively; the third and fourth allege interference with contract on behalf of the Corporation and Infanti, respectively;

1

the fifth and sixth allege breach of fiduciary duty to the Corporation and Infanti, respectively; the seventh and eighth allege negligence by the Board of Directors of Amboy National Bank (the "Amboy Board") on behalf of the Corporation and Infanti, respectively. On August 14, 2009, the Corporation stipulated to the dismissal of all its claims against all of the defendants. Stip. Of Dismissal (Dkt. No. 41). Surviving, therefore, are Infanti's second, fourth, sixth, and eighth causes of action.

The Amended Complaint, although considerably shorter than the original version, is still far from the "short and plain" statement Rule 8 requires. The pared-down version is unredeemed by a motion for partial summary judgment filed by Infanti, individually, on his sixth cause of action, consisting of a 75-page Memorandum of Points and Authorities and 78 pages of exhibits. Pl.'s Mot. for Partial Summ. J. (Dkt. No. 43). The motions pending before the Court are motions for summary judgment on behalf of all the defendants, except Elizabeth Kavlakian, and Infanti's motion for partial summary judgment.

## DISCUSSION

The precursor of this case was commenced more than 23 years ago by George Gasser and the Gasser Chair Company against Vittorio Infanti and the Infanti Chair Company. That action resulted in a judgment in excess of 15 million dollars against Infanti and his company for trade dress infringement. That judgment was sought to be assiduously undermined and evaded by Infanti and the Company, who were joined in that tenacious endeavor by George Scharpf and others, giving rise to litigation which spanned fifteen years. That case, <u>Gasser v. Infanti, et. al</u>, 03 Civ. 6413, is documented in a docket sheet of 486 entries and, even now, is pending before the Second Circuit Court

of Appeals. The backdrop for this action, pieces of which are referenced in the Amended Complaint, can be fully understood by reading just two of the many opinions written in that case, which can be found referenced in 2008 WL 2323367 (E.D.N.Y. June 2, 2008) and 2011 WL 2183549 (E.D.N.Y. June 3, 2011).

Reduced to its essence, this Complaint alleges a violation of 18 U.S.C. §§ 1962(a)-(d) and 1964. The RICO claim is based upon alleged predicate acts of wire fraud and mail fraud. As near as the Court can discern, the wire fraud predicate allegation is based upon a telephone call made in 1999 by Scharpf to Infanti, who was then in Argentina, inducing him to return to Staten Island by allegedly falsely representing that he, Scharpf, would return to Infanti the building and the chair manufacturing business, the Infanti Chair Company, he conducted there. This, Infanti alleges, was in furtherance of Scharpf's scheme to appropriate that business for himself. The mail fraud predicate is allegedly based upon an application for a Certificate of Incorporation mailed by Scharpf to the New Jersey Secretary of State in 2001. The alleged "fraud" is Scharpf's withholding from the Secretary of State that the corporation he formed would be the indispensible piece of his plan to deceive Infanti.

The interference with contract, the fourth cause of action – again, as near as the Court can discern – is alleged to be the prevention of the consummation of an oral agreement Infanti allegedly had with Gasser that would result in the satisfaction of the judgment against him held by Gasser. The sixth cause of action alleges a breach of fiduciary duty arising out of the "special relationship" between Infanti and Amboy National Bank and its officers. The eighth cause of action alleges the negligence of the Bank's Board of Directors in failing to exercise their duty of reasonable care to prevent

Scharpf from causing the bank to aid and abet his fraudulent scheme.  On August 18, 2008, Defendant George Scharpf filed a Counterclaim against Infanti, seeking repayment of $1,355,000 of unpaid loans made to the Corporation and personally guaranteed by Infanti.  Scharpf Def.'s Ans. and Countercl. (Dkt. No. 19).  Neither party seeks summary judgment as to the counterclaim.

The irony of this lawsuit, as a reading of the two opinions of this Court in <u>Gasser v. Infanti</u> will reveal in detail, is that Infanti was a willing and knowing conspirator together with Scharpf in dismantling, removing, and concealing essential pieces of machinery for the manufacture of chairs from the premises of the Company, thus excluding them from and sabotaging the public auction sale ordered by the Court.  That machinery was subsequently restored to the premises, together with the entire inventory purchased at that sale by Scharpf, and the chair manufacturing business was once again operational.  It was Infanti's candid and persuasively credible testimony that revealed that brazen hijacking of the Corporation by him and Scharpf, in the additional litigation compelled by that revelation.  This lawsuit is the classic affirmation of an adaptation of the proverb that there is no honor among malefactors.

## I.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986).  As an initial matter, the moving party has the burden of demonstrating that no genuine dispute of material fact exists for trial.  <u>Matsushita</u>, 475 U.S. at 586.  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court will also take judicial notice of judgments in the prior, related proceedings before this Court that involved the same parties. Joseph v. HDMJ Rest., Inc., 685 F. Supp. 2d 312, 315 (E.D.N.Y. 2009) ("Even if not incorporated in a complaint, the Court may take judicial notice of judgments entered in prior proceedings").

Once the moving party has met this burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586–87 (emphasis in original)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

The Court is compelled to draw all reasonable inferences in favor of the nonmoving party, Matsushita, 475 U.S. at 586, and a genuine dispute exists if a reasonable jury could find in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "A court faced with cross-motions for summary judgment need not 'grant judgment as a matter of law for one side or the other,' but 'must evaluate each party's motion on its own

5

merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" U.S. Bank Nat'l Ass'n v. Ables & Hall Builders, 696 F. Supp. 2d 428, 438 (S.D.N.Y. 2010) (quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## II. Second Cause of Action: RICO

Plaintiff alleges, without specificity, that all ten defendants violated all four provisions of the RICO statute, 18 U.S.C. § 1962.[1]  Defendants seek summary judgment, arguing: (1) plaintiff lacks standing to bring these claims; and (2) as a matter of law, the facts alleged do not constitute the requisite two or more predicate acts of racketeering activity. 18 U.S.C. § 1961(5).

### A. Standing

Defendants argue that even if Infanti were to demonstrate that defendants violated the RICO statute, as a matter of law plaintiff does not have standing to bring a claim. To have standing to bring a civil RICO claim, a plaintiff must show: (1) a violation of substantive RICO, 18 U.S.C. § 1962; (2) injury to "business or property"; and (3) that the injury was caused by the violation. Gotlin v. Lederman, No. 05 Civ. 1899

---

[1] Section 1962 makes it unlawful, inter alia, (1) to invest income derived from a pattern of racketeering activity in any enterprise that is engaged in interstate commerce, § 1962(a); (2) to acquire or maintain control of such an enterprise through a pattern of racketeering activity, § 1962(b); (3) to participate in the conduct of such an enterprise's affairs through a pattern of racketeering activity, § 1962(c); or (4) to conspire to do any of the above, § 1962(d).

Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984), vacated on other grounds, 473 U.S. 922, 105 S. Ct. 3550, 87 L. Ed. 2d 673 (1985).

(ILG), 2006 WL 1154817, at *5 (E.D.N.Y. Apr. 28, 2006) (citing Gause v. Morris, No. 99 Civ. 6226 (JS), 2000 WL 34016343, at *3 (E.D.N.Y. Aug. 8, 2000)).

"'The requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage.'" Gotlin v. Lederman, 367 F. Supp. 2d 340, 356 (E.D.N.Y. 2005) (quoting Bankers Trust Co., 741 F.2d at 515). "For example, a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his building is the type of injury for which § 1964(c) permits suit." Bankers Trust Co., 741 F.2d at 515. "Proprietary" damage does not include "physical, emotional or reputational harm." State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 152 (E.D.N.Y. 2005) (citations omitted).

Plaintiff alleges that, through racketeering activities, defendants controlled the Corporation, took income from the Corporation, and invested the income in EKI, LLC ("EKI"), all with the objective "that EKI would flourish and the plaintiffs' respective businesses would be destroyed." Am. Compl. ¶¶ 34, 36-37. Although plaintiff states in his complaint that he has been injured in the amount of $100,000,000, plaintiff's accountant assessed plaintiff's losses to be $395, 565 in "lost profits" of the Corporation and $1,510,317 in "lost owner compensation." See Pl.'s Statement of Undisputed Material Facts ¶ 14 (Dkt. No. 49-4); Declaration of Avrin Slatkin dated October 29, 2009 ("Slatkin Decl.") Ex F (Dkt. No. 44-9).

While these are indeed injuries to "business or property," they are injuries to the Corporation, not Infanti. In his efforts to evade the Gasser Judgment, Infanti was never

a director or shareholder of the Corporation. Pl.'s Statement of Undisputed Material Facts at 5-6 (Dkt. No. 49); Slatkin Decl. Ex. B at 92; Ex. I, at ¶ 3. For the first four years of the Corporation's existence, Infanti had no formal relationship with the company: it was not until September 6, 2002 that he was elected President and CEO and entered into an employment agreement, with an annual salary of $48,000 a year. Slatkin Decl. Ex. B, at 97, 206; Ex I, at ¶ 8. Prior to this, he received no salary but all his living expenses, including such things as his rent, utilities, cable service, and food were paid for by the Corporation in consideration for the services he rendered to the corporation. See Gasser v. Infanti Int'l, Inc., 353 F. Supp. 2d 342, 347 (E.D.N.Y. 2005).

It is well-settled law that shareholders, officers, and employees lack standing to bring a civil RICO claim, in their individual capacities, for injuries to the corporation. See Bingham v. Zolt, 66 F.3d 553, 561–62 (2d Cir. 1995) ("The shareholder in such a case is injured only as a result of the injury to another, i.e., the corporation, and therefore generally lacks standing."); Manson v. Stacescu, 11 F.3d 1127, 1130–33 (2d Cir. 1993), cert. denied, 513 U.S. 915, 115 S. Ct. 292, 130 L. Ed. 2d 206 (1994) (shareholders and employees do not have standing because their injury is derivative of that of the corporation and does not satisfy RICO's proximate cause requirement); At The Airport v. ISATA, LLC, 438 F. Supp. 2d 55, 62 (E.D.N.Y. 2006) (individuals cannot assert a RICO claim in an individual capacity based on claims of injury suffered by a third-party in which they have a financial interest); Leung v. Law, 387 F. Supp. 105, 122-123 (E.D.N.Y. 2005) (plaintiff shareholder lacked standing to assert claim for injuries caused by the RICO predicates to the corporation).

Nor does Infanti's personal guarantee of the Amboy loans create standing to bring a civil RICO claim for losses to the corporation. In Manson, the Second Circuit confronted precisely this issue. Plaintiffs, who were shareholders and employees of the company, personally guaranteed $450,000 in bank loans to the company. As a result of racketeering activities by persons both inside and outside the company, the company was unable to repay the loans and plaintiffs became obligated for the debt. The court found the plaintiffs lacked standing because "[t]he alleged looting of the Company only harmed the [plaintiffs] indirectly." Manson, 11 F.3d at 1130 (noting creditors of a corporation generally do not have standing under RICO). Thus, as a matter of law, Infanti does not have standing to assert RICO claims, in his individual capacity, for the alleged losses the Corporation suffered. The Corporation, the appropriate plaintiff to bring these claims, stipulated to the dismissal of all its claims against all of the defendants. See Stip. Of Dismissal.

For the foregoing reasons, plaintiff does not have standing to bring this claim and, accordingly, defendants' motion for summary judgment as to plaintiff's Second Cause of Action is granted. Because the Court finds that the plaintiff lacks standing, it is unnecessary to address defendants' arguments regarding the inadequacy of the alleged predicate acts.

### III.    Fourth Cause of Action: Interference with Contract

Defendants also seek summary judgment on plaintiff's Fourth Cause of Action, interference with contract. Plaintiff alleges that he negotiated with Gasser to discharge the $15 million outstanding judgment for a reduced $1 million payment. Am. Compl. ¶¶ 21, 28; Decl. of Vittorio Infanti dated November 11, 2009 ("Infanti Decl."), ¶¶ 3-4 (Dkt.

9

No. 49-4). Plaintiff alleges that to prevent this satisfaction of judgment, defendants unlawfully interfered with a contract Infanti made with an investor, Ekmel Anda ("Anda"), who agreed to loan Infanti $2 million in exchange for a share in the Company. See Am. Compl. ¶¶ 21-22, 48, 52 ("the defendant group, knowingly, with actual malice and without excuse <u>intentionally interfered with the Judgment payoff agreement</u>. . . ." (emphasis in original)); Pl.'s Mem. of Law in Opp. to Scharpf Mot. for Summ. J. at 9 (Dkt. No. 49).

An unlawful interference with contract is defined as follows: "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement (Second) of Torts § 766 (2011). "In order to state a claim for tortious interference with contract under New York law, plaintiffs must demonstrate 'the existence of a valid contract between the plaintiff[s] and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'" <u>Discover Grp., Inc. v. Lexmark Int'l., Inc.</u>, 333 F. Supp. 2d 78, 83-84 (E.D.N.Y. 2004) (citing <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)).

In this case, plaintiff alleges no more than verbal discussions with Gasser, negotiating the terms of a Stipulation of Settlement. The agreement with Anda consisted, by Plaintiff's own description, of "a rudimentary typed four page agreement,"

10

Pl.'s Amboy Reply Mem. at 9 & 13 (Dkt. No. 49), and was never finalized. Affidavit of Dennis T. Kearney dated October 30, 2009 ("Kearney Aff.") Ex. F, at 29-32 (Dkt. No. 45-2). It is undisputed that neither agreement was ever signed.

As a matter of law, these agreements cannot be considered enforceable contracts, an essential element of the tort, and were merely prospective contractual relationships. "[A] claim for interference with a prospective contractual relationship requires the injured party to prove that the interfering party's conduct was culpable. Gortat v. Capala Bros., Inc., 585 F. Supp. 2d 372, 376 (E.D.N.Y. 2008) (citing Carvel Corp. v. Noonan, 3 N.Y.3d 182, 785 N.Y.S.2d 359, 818 N.E.2d 1100, 1103 (2004)). Culpable conduct includes "'physical violence, fraud or misrepresentation, civil suits or criminal prosecutions, and some degrees of economic pressure,' but it does not include mere persuasion." Id. (citing Carvel, 785 N.Y.S. 2d at 191). At deposition, Anda stated that the reason he did not sign the contract with Infanti was that he personally disliked the plaintiff's wife, Kavlakian, and "didn't feel like being in business with somebody I am not going to get along with." Kearney Aff., Ex F., at 30. Plaintiff argues Kavlakian intentionally upset Anda, "causing him to dislike her, thereby blocking the judgment payoff." Pl.'s Amboy Reply Mem., Separate Statement of Undisputed Facts at 8 (Dkt. No. 49); see also Pl.'s Statement of Undisputed Material Facts in Supp. of Mot. for Partial Summ. J. at 18 (Dkt. No. 53-3) (summarizing Kavlakian's comments to Anda). Plaintiff has not alleged any conduct by the defendants that even remotely satisfies the pre-requisites for asserting a valid claim for tortious interference with contract. For the above reasons, Defendants' motion for summary judgment is granted as to plaintiff's fourth cause of action.

## IV. Sixth Cause of Action: Breach of Fiduciary Duty

Plaintiff alleges that the defendants were in a "special relationship" with him and breached their fiduciary duty by, among other things: being in "almost 100% secret control of the plaintiffs and their business;" "favoring one depositor EKI over the plaintiff Vittorio Infanti, also a depositor;" passing business information to EKI; and hiding "their self interest in all transactions, all to [Infanti's] damage." Am. Compl. ¶¶ 61-64. Although plaintiff does not specify in the complaint which defendants breached their fiduciary duty, as near as the Court can discern the plaintiff alleges this breach against Amboy, the Amboy Board, Scharpf, in his individual capacity, and Kavlakian. See Pl.'s Mem. of P. & A. at 2 (Dkt. No. 43).[2] Plaintiff seeks summary judgment on this claim, alone. Defendants also seek summary judgment.

Under New York law, the elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; and (2) the breach of that fiduciary duty.[3] Shpak v. Curtis, No. 10 Civ. 1818 (RRM) (JO), 2011 WL 4460605, at *15 (E.D.N.Y. Sept. 26, 2011) (citing Russo v. Banc of Am. Sec., LLC, No. 05 Civ. 2922 (DAB), 2007 WL 1946541, at *8 (S.D.N.Y. June 28, 2007). "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) of Torts § 874 (2011).

### A. Amboy and the Amboy Board

---

[2] It appears this is also the defendants' understanding, as reflected in their memoranda of law in opposition to plaintiff's motion for partial summary judgment.

[3] The parties (if they cite to any law at all) cite without distinction to both New Jersey and New York law. In any event, the outcome under either state's law would be the same. See McKelvey v. Pierce, 173 N.J. 26, 57, 800 A.2d 840, 859-60 (2002) (summarizing the elements of a breach of fiduciary duty under New Jersey law).

The relationship between Infanti, Amboy, and the Amboy Board was that of a creditor and debtor, created by Infanti's deposits with the bank and a series of loans made by the bank to the Corporation, which Infanti guaranteed.  It is well-established under both New Jersey and New York law that a creditor-debtor relationship is not a fiduciary one.  BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 989-90 (S.D.N.Y. 2003) ("[T]he relationship between a lender and borrower is not fiduciary in nature."); Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632, 640 (E.D.N.Y. 2000) ("[T]he bank-depositor agreement standing alone creates no fiduciary relationship between the parties."); Bennice v. Lakeshore Sav. & Loan Ass'n, 254 A.D.2d 731, 732, 677 N.Y.S.2d 842, 842 (4th Dep't 1998) (the relationship between a bank and its depositor is that of debtor and creditor, which, without more, is not a fiduciary relationship); N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc., 319 N.J. Super. 435, 725 A.2d 1133 (1998) ("[A]s a general proposition, creditor-debtor relationships rarely give rise to a fiduciary duty 'inasmuch as their respective positions are essentially adversarial.'" (citing Globe Motor Car v. First Fid. Bank, 273 N.J. Super. 388, 393 (1993), aff'd 291 N.J. Super. 428 (app. Div.), certif. denied 147 N.J. 263 (1996))).  Infanti has not alleged any facts that would establish a "special relationship" imposing a fiduciary duty on Amboy or the Amboy Board.

Amboy and the Amboy Board also may have stood in a landlord-tenant relationship with Infanti, to whom they leased the Richmond Terrace premises.  See Def. Amboy's Mot. for Summ. J., Ex. B (Dkt. No. 45).  This relationship was also not a fiduciary one.  See Dembick v. 220 Central Park S., LLC, 33 A.D.3d 491 (1st Dep't 2006) (landlord and tenant relationship does not normally create a fiduciary relationship).

13

Summary judgment is therefore granted to the defendants, dismissing the Sixth Cause of Action against Amboy, the Amboy Board, Peter W. Davis, Scharpf, as Chairman of the Board, President, and Chief Executive Officer of Amboy, and Stanley Koreyva, Jr., as Chief Financial Officer of Amboy.

### B. George Scharpf

In addition to acting in his capacity as an officer of Amboy, Scharpf individually loaned money to the Corporation, loans personally guaranteed by Infanti. Scharpf argues he is simply a creditor of the Company and, by extension, a creditor of Infanti should the Company fail to repay the loan. Decl. of George Scharpf in Supp. of Mot. for Summ. J. dated October 23, 2009 (Dkt. No. 44-12). For the reasons previously discussed, a creditor-debtor relationship is not a fiduciary one. To establish a fiduciary duty under these circumstances, plaintiff would need to demonstrate more than an ordinary business relationship with Scharpf and show "'a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding, or an assumption of control and responsibility.'" U.S. Bank Nat. Ass'n v. Ables & Hall Bldrs., 696 F. Supp. 2d 428, 442 (S.D.N.Y. 2010) (quoting Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 (2d Cir. 1993)). Aside from a conclusory statement the defendants had "100% secret control of the plaintiffs and their business," plaintiff fails to allege any facts that would support finding a fiduciary relationship between Scharpf and Infanti. In fact, Infanti testified at deposition that Scharpf did not participate in the business of the Corporation in any way. See Def. Scharpf's Mot. for Summ. J., Ex. B (Deposition of Vittorio Infanti) at 206-209 (Dkt. No. 44-5). Summary judgment is

14

therefore granted to the defendants, dismissing the Sixth Cause of Action against Scharpf, individually.

### C. Elizabeth Kavlakian

As far as the Court can discern, Plaintiff also seeks summary judgment against his former wife, Elizabeth Kavlakian, for breach of fiduciary duty.  See Am. Compl. ¶ 20; Aff. of Vittorio Infanti in Supp. of Mot. for Summ. J. ¶¶ 11-12 (Dkt. No. 43); Pl.'s Amboy Reply Mem. at 6-8 (Dkt. No. 49).  Kavlakian, acting pro se, opposes the motion.  See Letter from Elizabeth Kavlakian dated November 16, 2009 (Dkt. No. 50).  Since Kavlakian is proceeding pro se, her pleadings "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir.2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)).

Essentially, plaintiff alleges that Kavlakian used her relationship as his wife to obtain confidential business information from him which she then secretly exploited, in collaboration with the other defendants, to establish a competitor business, EKI.  See RICO Statement at 8-9 (Dkt. No. 13-3).  Currently, Kavlakian is President of EKI and that company owns the assets that were once the Corporation's, including the INFANTI trademark, and sells chairs bearing the mark.  Decl. of Elizabeth Kavlakian dated October 23, 2006, ¶¶ 1, 3, & 5 (Dkt. No. 47).

Kavlakian's marriage to Infanti, alone, does not create a fiduciary relationship. United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991) ("Although spouses certainly may by their conduct become fiduciaries . . . more than the gratuitous reposal

of a secret to another who happens to be a family member is required to establish a fiduciary or similar relationship of trust and confidence."). A fiduciary relationship exists where there is "reliance, and de facto control and dominance," United States v. Margiotta, 688 F.2d 108, 125 (2d Cir. 1982), or where there is "repeated disclosure of business secrets" between the spouses. United States v. Corbin, 729 F. Supp. 2d 607, 617 (discussing Chestman, 947 F. 2d at 569). It is apparent that Kavlakian was involved in Infanti's business dealings to some extent. See, e.g., Kearny Aff. Ex. F, at 30-32 (Dkt. No. 45-1); Infanti Decl. ¶ 2 ("I also invested a lot of time and effort in training my wife Elizabeth Kavlakian regarding how to run the factory"). However, these general, undifferentiated allegations do not establish a fiduciary relationship. Plaintiff's motion for summary judgment against Kavlakian on the sixth cause of action is therefore denied.

### D. Eighth Cause of Action: Negligence by Amboy Board

Defendant Amboy Board seeks summary judgment on plaintiff's eighth cause of action, a claim of negligence. Among other things, plaintiff alleges that the Amboy Board had a duty to oversee the actions of Scharpf and failed to prevent Scharpf from "for many years . . . systematically defrauding both the bank and its customers by unfair competition and by failing to disclose [his] criminal conduct . . . ." Am. Compl. ¶ 82. Plaintiff alleges that the Amboy Board was "looking the other way, or they accepted a small yearly payment to sit on the board, and essentially agreed with whatever Scharpf did." Am. Compl. ¶ 89. As a result, Amboy was defrauded, the bank lost considerable sums in unpaid loans to the Corporation, and the bank sold real estate it owned at Richmond Terrace to Scharpf for a fraction of its actual value. Am. Compl. ¶ 87.

16

Three basic elements are essential for the existence of a cause of action in negligence: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach. Harper v. United States, 949 F. Supp. 130, 132 (E.D.N.Y. 1996). Defendants move for summary judgment on the ground that plaintiff lacks standing to bring this claim, essentially arguing that he has failed to show he suffered any cognizable harm. See Lujan v. Defenders of Wildlfe, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (standing requires, among other things, plaintiff to have suffered an injury fairly traceable to the defendant). Defendant Amboy also argues, for the reasons previously discussed, that Amboy owed no duty of care to Infanti. Whether characterized as a lack of standing or as a failure to state a claim for negligence, it is apparent the alleged injuries are to Amboy, not to plaintiff, and summary judgment must be granted to the defendants.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment on the Second, Fourth, and Eighth Causes of Action is GRANTED. Those causes of action are dismissed as to all defendants. As to the Sixth Cause of Action for breach of fiduciary duty, defendants Amboy and Scharpf's motions for summary judgment are GRANTED and plaintiff's motion for summary judgment is DENIED. A status conference will be scheduled to resolve Infanti's remaining claim against Kavlakian and Scharpf's counterclaim.

**SO ORDERED.**

Dated:      Brooklyn, New York
            February 14, 2012


                                                       ___/s/_____
                                                       I. Leo Glasser, U.S.D.J.